E-FILED
Wednesday, 22 July, 2026  02:42:41 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

CHRISTOPHER LEWIS,
    Plaintiff,

v.

JACKIE MATHIAS, *et al.*,
    Defendants.

Case No. 1:25-cv-01067-JEH

### Order

This matter is now before the Court on Defendants' Motions for Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies. (Docs. 58, 61, 70). For the reasons stated below, Defendants' Motions are GRANTED.

### I

Plaintiff, proceeding *pro se*, filed a Second Amended Complaint under 42 U.S.C. § 1983 alleging Defendants Jackie Mathias, Bethany Bane, Stacey Salmonson, Dr. Monica Duran, and Jennifer Verbarg violated his constitutional rights while he was detained at the McLean County Detention Facility ("Detention Facility"). (Doc. 44). Plaintiff also alleges Defendant Matt Lane, in his official capacity as the McLean County Sheriff, violated his rights under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") by refusing to administer suboxone films or pills as prescribed, thereby depriving him of the benefits of the Detention Facility's medication-assisted treatment ("MAT") program.

Plaintiff alleges he was diagnosed with opioid use disorder ("OUD") and prescribed medication as part of a MAT program before he was detained at the Detention Facility. Plaintiff alleges Defendants, who were aware of his OUD

1

diagnosis, were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment by failing to provide his prescribed suboxone films or pills to treat his OUD beginning in August 2024. Plaintiff states Defendants provided over-the-counter pain medication to treat his withdrawal symptoms, but the medication was ineffective. Plaintiff also alleges Defendants administered Sublocade injections to treat his OUD, but the injections made him ill. Plaintiff alleges he informed Defendants the injections made him ill and were ineffective, but Defendants still refused to provide his prescribed suboxone films or pills.

On November 21, 2025, Defendants Salmonson, Lane, Mathias, and Bane filed Motions for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies. (Docs. 58, 61). On January 13, 2026, Defendants Dr. Duran and Verbarg filed a Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies. (Doc. 70). On April 20, 2026, Plaintiff filed a consolidated Response to Defendants' Motions. (Doc. 91). On May 4, 2026, Defendants Lane, Mathias, and Bane filed a Reply. (Doc. 96). On May 18, 2026, Defendants Dr. Duran and Verbarg filed a Reply. (Doc. 99).

## II

During the relevant period, Plaintiff was detained at the Detention Facility. Defendant Lane is the McLean County Sheriff. Defendants Mathias and Bane worked in Inmate Services at the Detention Facility. Defendants Dr. Duran, Nurse Verbarg, and Salmonson were employed at the Detention Facility during the events at issue.

The Detention Facility has a grievance procedure, which is outlined in the McLean County Detention Facility Inmate Information and Orientation Handbook ("Handbook"). (Doc. 61-1). Upon incarceration, each inmate is provided with a copy of the Handbook. (Doc. 61-3 at ¶ 8). An electronic copy of the Handbook is also available to inmates on the Detention Facility Tablet. *Id.*

2

For non-medical grievances, the Handbook provides that the first step of the grievance procedure should be completed within five days of the incident by filing a grievance with the Detention Facility's Watch Commander (Level 1). *Id.* at ¶ 10. Upon receipt of the grievance response, if the situation is not resolved to the inmate's satisfaction, the inmate may appeal or advance the grievance to the Detention Facility's Assistant Superintendent within five days (Level 2). *Id.* If the issue is still not resolved to the inmate's satisfaction, the inmate may appeal or advance the grievance to the Detention Facility's Superintendent within five days (Level 3). *Id.* Finally, the inmate may appeal or advance the grievance to the Sheriff within five days (Level 4). *Id.*

An inmate may also file a grievance related to his medical and mental health care. *Id.* at ¶ 11. The medical grievance procedure requires an inmate to first attempt to verbally resolve the issue with the medical staff or obtain relief by submitting an Inmate Request to the medical staff outlining the inmate's complaint. *Id.* If the inmate is unsatisfied with the response, the inmate can submit a medical grievance addressed to the RN/LPN within five days of the incident (Level 1). *Id.* at ¶ 12. If the issue is not resolved to the inmate's satisfaction, the inmate may appeal or advance the grievance to the Detention Facility's Clinic Supervisor within five days (Level 2). *Id.* at ¶ 13. If the issue is still not resolved to the inmate's satisfaction, the inmate may appeal or advance the grievance to the Detention Facility's Physician within five days (Level 3). *Id.* Finally, the inmate may appeal or advance the grievance to the County Administrator within five days (Level 4). *Id.*

Grievances must state the specific right or act that was violated, who violated the right or act, and the date and time of the occurrence. *Id.* at ¶ 14; Doc. 61-1 at p. 6.

3

Plaintiff filed several grievances regarding his OUD medication, but he failed to advance any of the grievances through Level 4 before filing his lawsuit on February 19, 2025. (Doc. 1).

*Plaintiff's Paper Grievances*

On August 7, 2024, Plaintiff filed a paper grievance to a registered nurse ("RN") complaining about his OUD medication (Level 1). (Doc. 61-2 at pp. 55-56). On August 9, 2024, an RN responded to Plaintiff's grievance informing Plaintiff that his concern was addressed with the provider on August 7, 2024, and that due to safety and security concerns, he may taper off suboxone as prescribed by the provider or put in a request to see the provider to receive the Sublocade injection as discussed with the provider. *Id.* Plaintiff did not appeal his grievance. *Id.*

On August 7, 2024, Plaintiff submitted a second paper grievance complaining about his OUD medication. *Id.* at pp. 57-58. On August 9, 2024, an RN responded to Plaintiff's second paper grievance by informing him that "you may only open one grievance on the same topic." *Id.* at p. 57. Plaintiff did not appeal this grievance. *Id.* at pp. 57-58.

On August 9, 2024, Plaintiff submitted a third paper grievance complaining about his OUD medication (Level 1). *Id.* at pp. 59-60. On August 10, 2024, an RN responded to Plaintiff's third paper grievance by referring to the previous response on the prior grievances and by informing Plaintiff that he may only open one grievance on the same topic. *Id.* at p. 59. Plaintiff did not appeal this grievance. *Id.* at pp. 59-60.

On August 10, 2024, Plaintiff submitted a fourth paper grievance complaining about his OUD medication (Level 1). *Id.* at p. 61. On August 15, 2024, an RN responded to Plaintiff's fourth paper grievance by again informing him that he cannot open more than one grievance on the same topic and referred him to the Handbook. *Id.* Plaintiff did not appeal this grievance. *Id.*

On August 23, 2024, Plaintiff submitted a fifth paper grievance complaining about his OUD medication and marked Level 3 (MCDF Physician). *Id.* at p. 62. On September 13, 2024, an RN responded to Plaintiff's grievance by stating: "Please refer to page 4, section F of the inmate handbook. It has been more than 5 days since your last grievance. If you would like to be seen to start medications please sign up for sick call or put in a request to inmate services." *Id.* Plaintiff did not appeal this grievance. *Id.*

### *Plaintiff's Electronic Grievances*

On August 10, 2024, Plaintiff submitted an electronic grievance (#475222231) regarding his OUD medication claiming he was escalating a previous paper grievance. *Id.* at pp. 49-50. On August 11, 2024, an RN responded to Plaintiff's electronic grievance at Level 1 stating that he already had an open grievance on the same concern and to review the Handbook for procedures to follow regarding grievances. *Id.* at p. 50. Plaintiff escalated his electronic grievance to Level 2 on August 11, 2024. *Id.* On August 12, 2024, Plaintiff was again advised that he already had an open grievance on the issue and to refer to the Handbook for the grievance procedure. *Id.* at pp. 49-50. Plaintiff did not appeal his electronic grievance to Level 3. *Id.*

On August 15, 2024, Plaintiff submitted a second electronic grievance (#476796821) regarding his OUD medication. *Id.* at pp. 47-48. On August 17, 2024, an RN responded at Level 1 directing Plaintiff to refer to the Handbook for the proper grievance procedure. *Id.* at p. 48. On August 19, 2024, Plaintiff advanced his second electronic grievance to Level 2. *Id.* at pp. 47-48. On August 21, 2024, medical staff responded, advising Plaintiff that he cannot open more than one grievance on the same topic. *Id.* at p. 47. Plaintiff did not appeal his second electronic grievance to Level 3. *Id.*

5

On August 17, 2024, Plaintiff submitted a third electronic grievance (#477346911) regarding his OUD medication. *Id.* at pp. 45-46. On August 17, 2024, an RN responded and again referred Plaintiff to the Handbook for the proper grievance procedure. *Id.* at p. 46. On August 19, 2024, Plaintiff advanced his third electronic grievance to Level 2. *Id.* On August 21, 2024, medical staff responded, advising Plaintiff that he cannot open more than one grievance on the same topic. *Id.* at pp. 45-46. Plaintiff did not appeal his third electronic grievance to Level 3. *Id.*

On September 11, 2024, Plaintiff submitted a fourth electronic grievance (#484914761) regarding his OUD medication. *Id.* at pp. 41-42. On September 11, 2024, an RN responded: "Please refer to the MCDF Handbook for the correct way to submit a grievance. Thank you." *Id.* at p. 42. On September 15, 2024, Plaintiff advanced his fourth electronic grievance to Level 2. *Id.* at p. 41. On September 19, 2024, medical staff responded, advising Plaintiff that he already submitted a grievance on the topic and to review the response to his previous grievance. *Id.* On September 20, 2024, Plaintiff advanced his fourth electronic grievance to Level 3. *Id.* On September 24, 2024, medical staff responded, advising Plaintiff that it was a duplicate grievance and referred him to the prior responses. *Id.* Plaintiff did not advance his fourth electronic grievance to Level 4. *Id.*

On December 9, 2024, Plaintiff submitted an electronic grievance (#511790901) regarding the grievance procedure. *Id.* at p. 33. On December 12, 2024, an RN responded at Level 1, adding Plaintiff to sick call. *Id.* On December 14, 2024, Plaintiff escalated his electronic grievance to Level 2. *Id.* On December 20, 2024, medical staff advised Plaintiff that his concern was addressed in grievance #508149101. *Id.* Plaintiff did not advance this grievance to Level 3. *Id.*

On January 19, 2025, Plaintiff submitted a fifth electronic grievance (#524122911) regarding his OUD medication and complaints related to his knee and Achilles. *Id.* at pp. 17-20. On January 27, 2025, an RN responded at Level 1 by

informing Plaintiff that he had been added to sick call. *Id.* at p. 20. On January 31, 2025, Plaintiff appealed his electronic grievance to Level 2. *Id.* at p. 19. On February 5, 2025, Nurse Alana Strum responded at Level 2, informing Plaintiff that he had been placed on the list to follow up with the provider. *Id.* Plaintiff then appealed his electronic grievance on February 8, 2025, but before being seen by the provider. *Id.* On February 11, 2025, Plaintiff was seen by the provider. *Id.* at p. 18. On February 12, 2025, Plaintiff appealed his electronic grievance to Level 3 to the medical provider, although the grievance record inaccurately identifies that the appeal was to Level 4. *Id.* On March 7, 2025, Advanced Correctional Healthcare responded to Plaintiff's appeal. *Id.* On March 8, 2025, Plaintiff appealed his electronic grievance to the final level. *Id.* On March 10, 2025, the County Administrator's Office responded to Plaintiff's appeal. *Id.* at p. 17. Plaintiff did not exhaust this electronic grievance before filing suit on February 19, 2025. *Id.* at pp. 17-20; Doc. 1.

None of Plaintiff's grievances specifically mention Defendant Mathias. Four grievances (#475222231, #476796821, #477346911, #484914761) mention Defendant Bane, but none of those grievances were advanced beyond Level 3.

Defendant Dr. Duran is mentioned only in an appeal of Plaintiff's electronic grievance #524122911, where Plaintiff simply claims that Dr. Duran stated that it is difficult to get an MRI approved. This grievance was not exhausted before Plaintiff filed suit. (Doc. 61-2 at pp. 17-20).

Defendant Verbarg was mentioned in one electronic grievance (#561452321), which Plaintiff submitted on May 15, 2025, after he filed suit on February 19, 2025. *Id.* at p. 9. On May 22, 2025, an RN responded at Level 1 by informing Plaintiff that the issue would be investigated. *Id.* Plaintiff did not advance his electronic grievance to Level 2. *Id.*

### III

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

### B

"The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners with complaints about prison conditions to exhaust available grievance procedures before bringing suit in federal court." *Perttu v. Richards*, 605 U.S. 460, 464 (2025); *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) (pretrial detainees are "prisoners" for purposes of the PLRA). Parties "have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim . . . ." *Perttu*, 605 U.S. at 469. Here, the exhaustion issue is not intertwined with the merits of Plaintiff's claims. There is no jury issue regarding exhaustion.

The PLRA prohibits prisoners from filing lawsuits pursuant to § 1983 "until such administrative remedies as are available are exhausted." § 1997e(a); Exhaustion of administrative remedies under § 1997e is a condition precedent to suit, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 2009), and applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Therefore, a lawsuit filed by a prisoner before he exhausted his administrative remedies must be dismissed because the district court lacks the discretion to resolve the claim on the merits. *Perez*, 182 F.3d at 535; *see also Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Unless an inmate completes the administrative process by following the rules the jail has established, exhaustion has not occurred. *Id.* at 1023. Exhaustion means completing all stages of the process in a timely and proper manner. *Id.* at 1024. An inmate cannot satisfy the requirements under § 1997e by filing an untimely or otherwise procedurally defective grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Failure to exhaust administrative remedies is an affirmative defense; the defendants have the burden of proving the inmate had available remedies he did not utilize. *Hernandez v. Lee*, 128 F.4th 866, 869 (7th Cir. 2025).

## IV

Defendants argue Plaintiff failed to exhaust his administrative remedies because he did not complete the Detention Facility's grievance process before filing suit. Plaintiff's Response is difficult to follow and devoid of factual or legal support. It appears to raise four main arguments: (1) Defendants or other jail officials exploited or manipulated the grievance procedure; (2) discovery is being

9

withheld; (3) Plaintiff's access to the grievance procedure through the tablet and/or phone system was blocked; and (4) the grievance procedure changed after Plaintiff filed this lawsuit. (Doc. 96).

During the relevant period, the Detention Facility's grievance procedure required inmates to submit medical grievances within five days of the incident and to advance their grievances in the following order:

Level 1:    RN/LPN

Level 2:    Clinic Supervisor

Level 3:    MCDF Physician

Level 4:    McLean County Administrator

The Handbook also required the inmate to state the specific right or act allegedly violated, who violated it, and the date and time of the occurrence. (Doc. 61-1).

Although Plaintiff submitted a paper grievance on August 7, 2024 regarding his OUD medication, he never appealed the RN's response to his grievance. Instead, Plaintiff submitted four additional paper grievances and multiple electronic grievances about his OUD medication, improperly opening new grievances on the same topic. Plaintiff submitted these additional grievances, despite being told he already had an open grievance on the topic and that he needed to follow the grievance procedure described in the Handbook. Because Plaintiff did not appeal his initial August 7, 2024 paper grievance, Plaintiff failed to exhaust his administrative remedies. *See Pozo*, 286 F.3d at 1023 (unless the inmate completes the administrative process by following the rules the jail has established for that process, exhaustion has not occurred).

Except for his January 12, 2025 grievance, Plaintiff did not advance any of his grievances beyond Level 3. As to Plaintiff's January 12, 2025 grievance, he failed to advance that grievance through the last step of the grievance process – the County Administrator (Level 4) – before filing suit on February 19, 2025.

Exhaustion must occur before a lawsuit is filed; a plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Plaintiff submitted an Affidavit with his Response, which contained conclusory allegations that the grievance process was manipulated, blocked, or made unavailable. (Doc. 91 at pp. 36-37). The affidavit did not offer specific details regarding these allegations. Plaintiff's allegations are thus insufficient to defeat summary judgment. *See Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).

Plaintiff also submitted a McLean County Detention Facility Case Note from August 7, 2024. (Doc. 91 at p. 38). In the Case Note, Plaintiff complained about his medications and stated that he would be "grieving it" and talking to a lawyer. *Id.* Contrary to Plaintiff's assertion regarding the unavailability of the grievance process, the Case Note demonstrates that Plaintiff knew he could use the grievance process and intended to do so.

An inmate can overcome his failure to exhaust administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use'; or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id*. (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

Since *Ross*, the Seventh Circuit has applied practical unavailability in recent appeals. *See Gooch v. Young*, 24 F.4th 624, 628 (7th Cir. 2022) (threats from prison guards made grievance procedures "unavailable"); *Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020) (mixed messages from the prison about the outcome of grievances

11

and the requirements from the inmate were sufficiently confusing to obscure necessary procedures and make relief "unavailable"); *Ramirez*, 906 F.3d at 535 (holding that grievance procedures were "unavailable" where they were only provided in English to a Spanish-speaking inmate).

Here, Plaintiff first attempts to argue the grievance process was unavailable because Defendants or other unidentified County employees exploited or manipulated the grievance process. Plaintiff asserts he made multiple attempts to comply with the grievance process, including trying to submit grievances electronically and in paper form, but unidentified staff members refused his grievances. However, Plaintiff's grievance records demonstrate that staff members consistently responded to Plaintiff's grievances and repeatedly referred him to the Handbook for the grievance procedure so that he could properly advance his grievances regarding his OUD medication. (Doc. 61-2).

Plaintiff's claim is also directly contradicted by his own admissions and conduct. Plaintiff not only had access to grievance forms both in paper form and electronically, but he submitted them himself, undermining his assertion that staff thwarted his attempts to complete the grievance process. More importantly, Plaintiff admits he successfully advanced his fifth electronic grievance (#524122911) regarding his OUD medication to the County Administrator, which demonstrates the grievance process was available to him. Plaintiff's decision to forego advancing his other grievances in accordance with the grievance process reflects a choice, not an external barrier, and does not satisfy the PLRA's requirement to exhaust all available administrative remedies before filing suit.

Plaintiff next attempts to argue the grievance procedure was unavailable to him because Defendants are withholding discovery. Plaintiff does not point to any document he believes Defendants are withholding or explain how that document

impacted his ability to submit and advance grievances. This argument is insufficient to defeat summary judgment.

Plaintiff next attempts to argue he was blocked from using the tablet and/or phone system to submit and advance grievances. Plaintiff submitted no evidence to support this assertion. In fact, the undisputed evidence shows that Plaintiff submitted and appealed multiple electronic grievances.

Finally, Plaintiff argues the Detention Facility changed the grievance process after he filed this lawsuit. Plaintiff presented no evidence showing that the process was changed post-litigation, what was changed, or how a post-litigation change rendered the grievance process unavailable to him.

The evidence shows Plaintiff knew about the grievance procedure, used it repeatedly, received responses, and advanced grievances when he chose to do so. Plaintiff did not complete the Detention Facility's medical grievance process through the final level on any of his grievances before filing suit. As a result, the Court finds that Plaintiff failed to exhaust his administrative remedies. Defendants Salmonson, Lane, Mathias, Bane, Duran, and Verbarg are entitled to summary judgment.

## V

For the reasons stated, *supra*:

(1)    Defendants' Motions for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies [58] [61] [70] are GRANTED. Defendants Jackie Mathis, Bethany Bane, Stacey Salmonson, Monica Duran, Jennifer Verbarg, and Matt Lane are DISMISSED WITHOUT PREJUDICE. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case.

(2)    Due to the dismissal of this case, Plaintiff's Motion for Show of Cause [105] is MOOT.

(3)    Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

(4)    If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a).

(5)    If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* FED. R. APP. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: July 22, 2026

s/Jonathan E. Hawley
U.S. District Judge

14